UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDWIN PALACIOS,<br>　　　　Petitioner<br>　　v.<br>JOE A. LIZARRAGA, Acting Warden,[1]<br>　　　　Respondent. | Case No: 11-03582 SBA (PR)<br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

The parties are presently before the Court on Petitioner Edwin Palacios's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254, in which he challenges his 2009 conviction in the San Francisco County Superior Court. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the petition for the reasons set forth below.

## I.　BACKGROUND

### A.　CASE HISTORY

On October 31, 2005, Petitioner was charged in the San Francisco County Superior Court with committing numerous offenses against multiple unrelated victims, all of whom were working as prostitutes when the alleged crimes were committed. Answer, Ex. A, Clerk's Transcript ("CT") 2-6.

On November 6, 2007, the prosecutor filed an information charging Petitioner with the rape of M.R., the attempted murder of S.R., and with committing rape and other offenses against I.M. CT 49-52.

On February 18, 2009, the trial commenced. CT 212-213. During jury selection, an out-of-state subpoena compelling the attendance of I.M. at trial was quashed and, as a

---

[1] Joe A. Lizarraga, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

1  consequence, the counts involving that alleged victim were dismissed and omitted from the
2  first amended information, which was filed March 5, 2009. CT 50-51.

3  On March 26, 2009, a San Francisco County jury convicted Petitioner of rape by
4  force or violence or threat of great bodily injury against M.R. Cal. Penal Code § 261(a)(2).
5  The jury also found true an allegation that Petitioner used a dangerous weapon, to wit: a
6  knife, in the commission of the offense. Id. § 667.61(e)(4).

7  On April 1, 2009, the jury announced that it could not reach a unanimous verdict on
8  the charge of attempted murder against S.R., and the trial court declared a mistrial as to
9  that count. CT 417.

10  On June 8, 2009, Petitioner was sentenced to life in state prison, with a requirement
11  that he serve a minimum of fifteen years before he is eligible for parole. CT 442, 452-453.

12  On March 17, 2011, the California Court of Appeal affirmed the judgment in an
13  unpublished reasoned opinion. Answer, Ex. E. On June 8, 2011, the California Supreme
14  Court denied review. Answer, Ex. G.

15  On July 21, 2011, Petitioner filed the instant habeas corpus petition raising an
16  ineffective assistance of counsel ("IAC") claim. Dkt. 1.

17  On August 17, 2011, the Court issued an order to show cause. Dkt. 5. Thereafter,
18  Respondent filed an answer, and Petitioner filed a traverse. Dkts. 9, 10.

19  **B.   STATEMENT OF FACTS**

20  The issues in the instant federal habeas action do not require a statement of the facts
21  pertaining to the attempted murder charge against S.R. Therefore, the Court will only focus
22  on the facts surrounding Petitioner's rape conviction involving M.R. and the admission of
23  evidence of his prior sexual conduct from 1994 involving another prostitute, named Norma
24  S. The following summary is taken from the opinion of the California Court of Appeal:

### 1.   *The charged offense*

> On April 13, 1996, M.R. was working as a prostitute in the Tenderloin district in San Francisco. At around 4:00 p.m., Palacios pulled his car over and told M. he was looking for a "half and half." M. understood that Palacios was asking for "a blow job and sex," requested "a hundred," and Palacios agreed.

M. got into the front passenger seat of the car and directed Palacios to a place where they could park, which was approximately 10 minutes away.

Palacios parked the car, and then paid M. M. put a condom on Palacios and then proceeded to orally copulate him for three to four minutes. M. then took one leg out of her pants and leaned back in her seat, at which point she heard a noise that sounded "like a shank." She asked Palacios what he was doing and said "please don't kill me." M.'s voice rose and Palacios "backhanded her," hitting her on the right side of her upper lip, and told her to "be quiet." Then Palacios climbed on top of her, and M. saw the "silver, pointy sharp" knife in his hand. The smooth blade was four inches long. M. asked Palacios why he was doing this and told him she just had a baby because she was afraid he was going to kill her.

Palacios put the knife to M.'s neck so she could feel the sharp tip against her throat. As he tried to penetrate her vagina with his penis, M. said "please stop, don't do this." Palacios told M. to be quiet and continued to hold the knife to her throat while he penetrated her and while she told him to stop. M. tried to take the knife, but then saw blood everywhere and felt her hands "kind of stinging" and then "just went numb." At that point, M. gave up and "just lay there" until Palacios finished having sexual intercourse.

When he was finished, Palacios reached into M.'s bra, where she had placed the $100 he had previously given to her. He took all of her money, the $100 and an additional $600 that she had made earlier that night. He moved back to the driver's seat and told M. that she could leave if she did not yell. M. got out of the car, wearing only her bra and shirt, and asked if she could take her purse, but Palacios said no. As she ran away, she looked at the license plate and tried to remember the last three numbers. [FN 2]

[FN 2:] M. later told police that the license plate for the car Palacios was driving ended with "2 something 2." The parties stipulated at trial that, on May 19, 1996, Palacios was seen driving a brown four-door Toyota with the license plate 3NIF242.

M. ran to Geary Street where she used a pay phone to call for help. When police arrived, she told them she was a "working girl" and that she had been raped. M. was taken to San Francisco General Hospital for treatment and a rape test. A report of the examination reflected that M. had multiple lacerations on both of her hands and her lip was swollen. There was an abrasion at the posterior fourchette of her vagina and the vaginal entrance was red and tender. The report also stated that M. was a prostitute, that she had consensual oral sex

3

with her assailant but that he put a knife to her throat when his penis was in her vagina.

While at the hospital, M. was interviewed by Inspector Tom Cleary from the Sexual Assault Detail of the San Francisco Police Department. The incident she described to Cleary was consistent with her testimony at trial. Cleary testified that M. reported that she saw the knife in Palacios's hand when he climbed on top of her, that he told her to be quiet and that she said "don't kill me, I have a baby." M. also reported that Palacios inserted his penis in her vagina after he pulled the knife, and that he subsequently took her money.

### 2. *Uncharged Conduct*

Evidence of an incident involving Norma S. was admitted for the limited purpose of establishing that Palacios was disposed or inclined to commit rape. (See Evid. Code, § 1108.)

On June 1, 1994, at around 1:45 a.m., Norma S. was working as a prostitute near Mason and Powell Streets in San Francisco when Palacios honked and waived her over to his car and asked how much she charged for oral sex. Norma told him it would cost $100 and he agreed to pay. Norma got in the front passenger seat of the old car and directed Palacios to a parking lot, where he parked near a wall, which prevented Norma from opening the passenger door.

After Palacios paid Norma, she put a condom on him and orally copulated him for about five minutes. After he ejaculated, Norma said they were done and asked to be taken back. Palacios responded that they were not done, and pulled a silver knife from the driver side door. The blade on the knife was approximately seven inches long. Norma asked Palacios what he was going to do and he said something to the effect that "you are going to do what I ask you to do or else I will kill you." He held the knife near her face, either at her neck or chest and told her to turn around.

Norma turned around in her seat and Palacios climbed over to the passenger side of the car and forced himself on her from behind, penetrating her vagina with his penis without her consent. He threatened to "do [her] anally" and kept saying he was going to kill her. She felt the knife on her neck the whole time. After around 10 minutes, Palacios "finished," and then got back in the driver seat. Norma testified at trial that she probably asked if she could leave but his reaction was that he was ready to hurt her.

A car then pulled into the parking lot and Norma saw her only chance to get out alive. She rolled down her window,

4

> but was also struggling to protect herself against Palacios who was stabbing at her face and chest with the knife. She pushed herself out the car window. Palacios, who appeared to notice the other car, drove away, dragging Norma until she fell to the concrete.
>
> San Francisco Police Officer Kimberly Koltzoff and her partner responded to the report of Norma's stabbing. Koltzoff observed that Norma had lacerations on her hands and legs and that there was a lot of blood on her. Norma reported that she had consensual oral sex with Palacios and when he said he wanted to have vaginal intercourse, she told him it would cost more. Although Norma refused to share many of the details of the incident, she did report that Palacios forced his penis into her vagina. Officer Koltzoff testified at trial that the incident Norma described was a sexual assault. Norma was taken to the hospital, but refused to have a sexual assault exam.

Answer, Ex. E. at 2-5 (footnote in original). Meanwhile, the defense case was as follows:

> Palacios did not present any evidence. In closing argument, defense counsel took the position that the prosecution proved that Palacios committed many crimes, but not the charged offenses. The defense theory was that the prosecution established a pattern of behavior in which Palacios had consensual sex with prostitutes and then took out a knife and took their money. But that they failed to establish that Palacios raped M. . . . .
>
> With regard to the rape charge, defense counsel attempted to persuade the jury that Norma's testimony was crucial to the prosecution's case. He argued that two of the four prostitutes who testified admitted they were not raped and, therefore, the prosecution needed Norma to corroborate M.'s claim that Palacios raped her. Defense counsel then argued that Norma's testimony did not even pass the "smell test." He pointed out that, at the time of that incident, Norma refused to share the "details" with the police and refused to take a rape test, and he argued that her whole story just did not make sense. Then, defense counsel attempted to discredit M.'s testimony by pointing out perceived inconsistencies in her story, and arguing that she claimed she was raped so she would get more attention from the police and because she was afraid her pimp would be angry that she had been robbed.

Id. at 6-7.

## II.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a federal court cannot grant habeas relief with respect to any claim

5

adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (emphasis added).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted). Relief under the "unreasonable application" clause is appropriate "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. Habeas petitioners bear the burden of showing that a state court's decision applied Supreme Court precedent in an objectively unreasonable manner. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Habeas relief is warranted only if the constitutional error at issue is structural error or had a "substantial and injurious effect or influence in determining the jury's verdict." Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)). Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in "actual" prejudice. Brecht, 507 U.S. at 637.

On federal habeas review, the district court reviews the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991). In the absence of a decision from the highest state court, the Court "looks through" to the "last reasoned decision" addressing the particular claim. Id.; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000). Here, the California Court of Appeal's March 17, 2011 decision is the last reasoned decision to address Petitioner's IAC claim.

6

## III. IAC CLAIM

### A. BACKGROUND

Petitioner claims that he was denied his constitutional right to effective assistance of counsel at trial because his defense counsel[2] failed to offer evidence favorable to the defense. Dkt. 1-1 at 9. Petitioner claims that but for defense counsel's failure to offer favorable evidence, the jury would not have convicted him on the rape count involving M.R. Id. at 9-10. Petitioner argues that this was a "close case" where the prosecution had to "rel[y] heavily on prior act evidence . . . to support serious weaknesses in the complaining witness's testimony." Id. Petitioner specifically points to the admitted evidence that he had committed rape, robbery, and assault with a deadly weapon on Norma S. Id. at 14. Petitioner claims that the jury was "willing to entertain a reasonable doubt" because they failed to reach a verdict on the attempted murder count against S.R. Dkt. 1-1 at 9.

Prior to trial, the trial court conducted a California Evidence Code § 402 hearing[3] and ruled that the evidence of Petitioner's prior sexual conduct involving Norma S. was admissible pursuant to California Evidence Code § 1108. Section 1108 provides an exception in sex offense cases to the general inadmissibility of character trait evidence under California Evidence Code § 1101. See Cal. Evid. Code § 1108. The state appellate court summarized the background relating to the admissibility of the evidence involving Norma S., and stated as follows:

> Prior to trial, the prosecution gave Palacios notice of its intention to introduce evidence of the uncharged incident involving Norma S., pursuant to Evidence Code, section 1108 (section 1108). Palacios filed an in-limine motion to exclude this evidence arguing, among other things, that the incident did

---

[2] Petitioner was represented by two attorneys, Randy Montesano, Esq. and Blair Perilman, Esq. Each attorney handled different aspects of the trial. The Court collectively refers to both attorneys as "defense counsel" in its evaluation of Petitioner's IAC claim.

[3] California Evidence Code § 402 provides that when the existence of a preliminary fact is disputed, the trial court may hear and determine the question of admissibility of evidence out of the presence or hearing of the jury. See Cal. Evid. Code § 402.

7

> not qualify as a sexual offense.
>
> To support this argument, the defense provided the following factual information: Palacios was first charged with crimes against Norma in a 1997 complaint accusing him of rape, robbery and assault with a deadly weapon. However, because Palacios was a minor in 1994 when the incident occurred, the complaint was dismissed and a juvenile petition was filed. Thereafter, a hearing was conducted pursuant to Welfare and Institutions Code section 707 to determine whether Palacios could be charged as an adult. After that hearing, a new complaint was filed against Palacios, pursuant to which he was charged as an adult with kidnapping, assault with a deadly weapon, and second degree robbery, but not rape. Palacios pled guilty to the charged offenses and was sentenced to state prison for four years.
>
> At the hearing on in-limine motions, defense counsel argued that the decision not to re-file a rape charge against Palacios was tantamount to a determination that there was insufficient evidence to prove rape and, therefore, the prosecutor in this case should be estopped from claiming that Palacios committed a sexual offense against Norma.

Answer, Ex. E at 7-8. Specifically, defense counsel argued that the State's decision not to re-file the rape charge against Petitioner was a "clear [indication] that there was a probable cause determination that the [State] could not go further with the rape charge." Answer, Ex. B (vol. 6 of 25) (Reporter's Transcript ("RT") 2/23/09 re 402 Hearing) 463.

Meanwhile, the prosecutor argued that the State's decision not to re-file was irrelevant to whether such evidence should be admitted under § 1108, stating:

> . . . I think the key about 1108 is that it talks about previous sexual conduct. Not conviction, not sexual charges. In other words, whatever the D.A. charged back in 1997 as related to Norma S. is almost irrelevant for our proceeding because 1108 could be uncharged. Completely not even reported to the police. And depending on how the witnesses testify in 402 hearings it becomes admissible. I mean, regardless whatever the D.A. believes the cases were for charging back in '97 should be irrelevant in terms of the court's determination ultimately or whether it is admissible or not. Obviously if the defendant plead to sex cases in 1997 we wouldn't really have this discussion. But obviously that did not happen and this is why we had the purpose of the hearing for Norma S. today. And the key thing, obviously, is the defendant is charged with

> two counts of rape, one with [M.R.], count I, and one with [I.M.], which is count III.[4]  And obviously our position is the defendant has the propensity to rape, has the propensity to perform or do the acts that will be testified by Norma . . . .

RT 466-67.  The trial court agreed with the prosecutor and found that the evidence involving Norma was admissible, stating:

> . . . in terms of Norma S., this 402 hearing helped the court to determine whether or not the previous conduct was sexual conduct as defined by 1108.  And after hearing the evidence, I find that what happened to Norma S. was such a conduct, sexual conduct.  Even though she was not charged – even thought [sic] the defendant was not charged previously.  But that is not determinative of whether or not it comes in under 1108.

RT  471.  Defense counsel then argued that even if the trial court found that the prior act evidence involving Norma S. was admissible under § 1108, its admission was more prejudicial than probative and should therefore be excluded under California Evidence Code § 352,[5] stating:
> . . .the admission of this testimony would  be incredibly prejudicial to the defendant.  And also quite confusing.  When you discuss limiting instruction for this type of evidence, it will be very difficult for the jury to discern what to do with this type of evidence and how to use it against the defendant.  And given the inflammatory nature of it, that with Norma S. we will be discussing rape . . . , I think it would definitely be prejudicial to the defendant in the sense that there would be this assumption that what he did was a scheme amongst all these women, instead of treating them as separate crimes.

RT 471-72.  Notwithstanding defense counsel's objections, the trial court ruled that the prior act evidence involving Norma S. was nonetheless admissible and would not be excluded under § 352.  RT 476.

---

[4] As mentioned above, the rape charge involving I.M. was dismissed.

[5] California Evidence Code § 352 states:  "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

9

In the instant action, Petitioner argues that, once the trial court concluded that the prior act evidence involving Norma S. constituted sexual conduct, defense counsel should have moved to compel the introduction of evidence that: (1) the prosecution in Norma S.'s case dropped the rape charge; and (2) that Petitioner was sentenced to a four-year prison term for convictions relating to that incident. Dkt. 1-1 at 22-23. Petitioner claims that this evidence was beneficial to the defense because it undermined Norma S.'s credibility with respect to her rape claim and established that he had already been punished for what he did to her. Id. at 28-29.

The state appellate court specifically addressed the two distinct pieces of evidence and rejected Petitioner's ineffective assistance of counsel claim upon finding that he failed to demonstrate that counsel's performance was deficient or that he suffered any prejudice as a result of any alleged deficiency. Answer, Ex. E at 10-13.

### B.   APPLICABLE FEDERAL LAW

A claim for ineffective assistance of counsel under the Sixth Amendment is reviewed under the two-prong test set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687.

To satisfy the second prong under Strickland, petitioner must establish that he was prejudiced by counsel's substandard performance. See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694). Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." Gonzalez, 515 F.3d at 1014. Judicial scrutiny of counsel's performance is "highly

deferential." Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. See id. at 697.

On federal habeas, a petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam). A "doubly" deferential judicial review applies in analyzing ineffective assistance of counsel claims under 28 U.S.C. § 2254. See Cullen v. Pinholster, 131 S. Ct. 1388, 1410-11 (2011). The rule of Strickland, i.e., that a defense counsel's effectiveness is reviewed with great deference, coupled with AEDPA's deferential standard, results in double deference. See Cheney v. Washington, 614 F.3d 987, 995 (9th Cir. 2010). Put another way, when § 2254(d) applies, the question is not whether defense counsel's actions were reasonable, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 131 S. Ct. 770, 788 (2011). Moreover, because Strickland's standard for assessing defense counsel's effectiveness is a "general" one, state courts have "greater leeway in reasonably applying [that] rule," which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." See Cheney, 614 F.3d at 995 (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

The presumption that counsel made decisions in the exercise of professional judgment is especially strong when the defendant relies solely on the trial record, creating a situation in which a reviewing court has no way of knowing if counsel's acts or omissions were the result of a strategic motive. Gentry, 540 U.S. at 8. The petitioner "bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy." Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001).

C. ANALYSIS

1. Rape Charge in Norma S.'s Case

The state appellate court specifically rejected Petitioner's IAC claim upon determining that he had not established that defense counsel performed deficiently by

1   failing to make a motion to introduce evidence about the dropped rape charge in Norma
2   S.'s case. The state appellate court explained its decision as follows:

> Palacios mistakenly assumes that evidence was admissible under People v. Mullens (2004) 119 Cal. App. 4th 648. Mullens was a sex offense case in which the trial court admitted evidence of two uncharged sex offenses, but excluded evidence that the defendant was acquitted of one of those uncharged offenses. The Mullens court held that "[i]n a sex offense prosecution in which the trial court has admitted Evidence Code section 1108 propensity evidence that the defendant has committed an uncharged sex offense, it is error to exclude admission of evidence that the defendant has been acquitted of that offense, and such error is reversible if it is prejudicial under the Watson harmless error test." (Mullens, supra, 119 Cal. App. 4th at p. 652.)
>
> The Mullens court based its holding on the "Griffin rule," which was first announced by our Supreme Court in People v. Griffin (1967) 66 Cal. 2d 459, 465 (Griffin). There the defendant was convicted of murdering a woman after attempting to rape her. The Griffin court held that evidence the defendant had attempted to rape a different woman had been properly admitted at trial but that the trial court erred by excluding evidence that the defendant had been acquitted of the uncharged rape. (Id. at p. 465.) The court acknowledged there was contrary authority, but found that "the better rule allows proof of an acquittal to weaken and rebut the prosecution's evidence of the other crime." (Ibid.) It reasoned that this rule was "fair to both the prosecution and the defense by assisting the jury in its assessment of the significance of the evidence of another crime with the knowledge that at another time and place a duly constituted tribunal charged with the very issue of determining defendant's guilt or innocence of the other crime concluded that he was not guilty." (Id. at p. 466.) The court also reasoned that it "should not depart from the rule that a properly authenticated acquittal is admissible to rebut prosecution evidence of guilt of another crime." (Ibid.)
>
> In contrast to both Griffin and Mullens, Palacios was not acquitted of rape in Norma's case. Furthermore, Palacios offers no sound theory for extending the Griffin rule to a situation like this one. The evidence regarding what happened to Norma had not been previously presented to a trier of fact and, thus, there was no prior determination regarding the defendant's guilt or innocence of the uncharged crime which would have assisted the jury here. More importantly, admitting such evidence would have confused and distracted the jury by inviting them to speculate as to why the rape charge was dropped.

12

1  Answer, Ex. E at 10-11.  The state appellate court also rejected Petitioner's contention that
2  this evidence was "so favorable to the defense that there could be no legitimate reason for
3  a defense attorney to not at least attempt to convey this information to the jury."  Id. at 11.
4  Specifically, the state appellate court disagreed with this theory because there were valid
5  reasons for defense counsel *not* to introduce such evidence, stating:

> The evidence regarding the dropped rape charge is inherently ambiguous and was potentially extremely harmful to the defense.  If this fact was considered in light of testimony about what actually happened to Norma, the jury could well have concluded that Palacios successfully avoided a rape conviction in Norma's case by choosing a prostitute as his victim and that it was their job to make sure that did not happen again.  Furthermore, if the jury was fully informed about the details of the disposition in Norma's case, as Palacios now argues should have been the case, they may well have concluded that the rape charge was dropped as part of a plea deal which allowed Palacios to escape punishment for raping a prostitute.  Therefore, contrary to Palacios's claim on appeal, there was a sound strategic reason not to attempt to introduce this evidence to the jury.

Id. at 11-12.

Defense counsel's reasons for not seeking admission of evidence that the rape charge was dropped are not disclosed in the record.  However, when a defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect.  See Gentry, 540 U.S. at 8.  That presumption has particular force where a petitioner bases his IAC claim solely on the trial record, creating a situation in which a court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive."  Id.

In the absence of an explanation from defense counsel as to a reason for the exclusion of the allegedly favorable evidence, the Court turns to what the record *does* show.  It is clear from the record that defense counsel was a vigorous advocate in arguing *against* the admission of the evidence involving Norma S. during the § 402 hearing.  RT 463; Ex. E at 8.  While Petitioner does not take issue with defense counsel's efforts to prevent such evidence from being admitted, he argues that once the trial court ruled against him and admitted the evidence – defense counsel should then have fought to introduce the

13

1    dropped rape charge. Notably, the state appellate court rejected this theory, finding that
2    the fact that the State dropped the rape charge was *not* "exonerating" evidence which
3    proved the State questioned Norma S.'s credibility. Answer, Ex. E at 11.
4        Moreover, it is important to note that Petitioner was not *acquitted* of the rape charge
5    involving Norma; rather, the prosecutor merely decided *not to re-file* that charge. Thus,
6    the state appellate court appropriately found unavailing Petitioner's reliance on Griffin and
7    Mullens, which held that it was error to exclude admission of evidence that the defendant
8    had been acquitted of prior act evidence admitted under § 1108. Id. at 10-11. The state
9    appellate court found no deficient performance based on defense counsel's diligent efforts
10   in arguing against the admission of the harmful prior act evidence involving Norma S. at
11   the § 402 hearing, and decision not to introduce evidence of the dropped rape charge,
12   which could have been equally harmful. As the state appellate court explained, "the jury
13   could well have concluded that [Petitioner] successfully avoided a rape conviction in
14   Norma's case by choosing a prostitute as his victim and that it was their job to make sure
15   that did not happen again." Id. at 11-12.
16       A federal habeas court must give great deference to defense counsel's decisions at
17   trial. See Strickland, 466 U.S. at 689. Petitioner fails to show that defense counsel's
18   decision not to introduce evidence of the dropped rape charge was the result of anything
19   but "sound trial strategy." Id. Applying the "doubly" deferential standard of review under
20   § 2254, this Court cannot conclude that the state appellate court unreasonably applied
21   Strickland in rejecting Petitioner's IAC claim relating to defense counsel's alleged failure
22   to introduce the dropped rape charge.

### 2.     Punishment for Crimes Involving Norma S.

The state appellate court was also unpersuaded that defense counsel performed deficiently by failing to introduce evidence that Petitioner was convicted and punished for his crimes against Norma S., and rejected this portion of his IAC claim as follows:

> Admitting evidence that uncharged conduct resulted in a prior conviction can lessen the prejudicial impact of the uncharged conduct evidence by showing the jury that the defendant has already been punished for the prior conduct. (See People v.

14

> Ewoldt (1994) 7 Cal. 4th 380, 405-406; People v. Walker (2006) 139 Cal. App. 4th 782, 806-807.) However, under these circumstances, telling the jury that Palacios received a four-year sentence for his crimes against Norma and that he avoided a rape conviction altogether may have led the jury to conclude that Palacios was not sufficiently punished for his prior conduct and, indeed, that his light penalty only encouraged him to return to his pattern of committing sexual offenses against prostitutes.

Answer, Ex. E at 12.

Under Strickland, defense counsel is strongly presumed to exercise sound professional judgment. Gentry, 540 U.S. at 8 (quoting Strickland, 466 U.S. at 690). Here, Petitioner again has failed to rebut the presumption that defense counsel displayed sound trial strategy by not introducing evidence that Petitioner was convicted of the crimes involving Norma S. Instead, Petitioner argues that had the jury been informed that he had been punished for his crimes against Norma S., it "would not have been inclined to punish him for prior acts it mistakenly believed had gone unpunished." Dkt. 1-1 at 29. The state appellate court reasonably applied Strickland in determining that defense counsel's performance was not deficient because the jury could have also found that the punishment Petitioner received was insufficient for the crimes committed against Norma S. See Strickland, 466 U.S. at 687-88. Therefore, applying the "doubly" deferential standard of review under § 2254, this Court cannot conclude that the state appellate court unreasonably applied Strickland in rejecting this portion of Petitioner's IAC claim.

### 3. Prejudice

Even assuming arguendo that Petitioner's defense counsel was deficient, the Court, for reasons similar to those expressed by the state appellate court, finds that any such error was harmless. The state appellate court rejected Petitioner's theory that Norma S.'s testimony was the "linchpin" of the prosecution's case involving the victim of the charged offense, M.R., and that the jury would not have convicted him of raping M.R. if they had reason to doubt Norma S., stating as follows:

> Norma's testimony was not the linchpin of the rape case, notwithstanding defense counsel's efforts to portray it as such. Palacios does not dispute that the jury was properly instructed regarding the limited purpose of the Norma evidence

15

> and that Norma's testimony, by itself, was not sufficient to establish that Palacios raped M. Nor is there any dispute regarding the prosecutor's burden of proving beyond a reasonable doubt that the jury understood and followed these instructions.
>
> Furthermore, the notion that M's credibility somehow hinged on Norma's credibility is nothing more than a defense theory. M. was the only percipient witness to the crime. Her uncontradicted testimony was thorough and corroborated by police reports and medical reports that were made at the time the crimes were committed. It is not at all likely that admitting evidence regarding the outcome of Norma's case would have changed the outcome of this case.

Answer, Ex. E at 12-13.

The record shows that there was considerable evidence of Petitioner's guilt as to the rape of M.R. At trial, M.R. provided the jury with detailed testimony, consistent with her statements to police, about Petitioner's actions of forcing himself on top of her, holding a knife to her neck, and penetrating her vagina without her consent. Answer, Ex. B (vol. 15 of 25) (RT 3/16/09 re Trial) 2015-2018, 2029. M.R. also described the knife as a silver, smooth blade with a sharp tip that was "maybe four inches." RT 2015-2016. M.R. immediately reported the rape after escaping from Petitioner's car. RT 2024, 2027-2028. She also provided a tape-recorded statement and consented to a rape test, which corroborated her testimony. RT 2028. M.R. suffered injuries to her vaginal opening and to her hands. RT 2027, 2042-2043; Answer, Ex. B (vol. 17 of 25) (RT 3/18/09 re Trial) 2431-2432, 2440. Finally, the partial license plate number M.R. provided matched that of the car Petitioner was subsequently seen driving. RT 2052; Answer, Ex. B (vol. 18 of 25) (RT 3/19/09 re Trial) 2710. Given the strength of the evidence against Petitioner in *M.R.'s case*, it cannot be said "the result of the proceeding would have been different" had the jury learned of the dropped rape charge or the four-year sentence in *Norma S.'s case*. See Strickland, 466 U.S. at 694.

In sum, Petitioner fails to establish that the state appellate court's rejection of his IAC claim was contrary to, or an unreasonable application of Strickland. Accordingly, Petitioner is not entitled to habeas relief on this claim.

16

**IV.     CERTIFICATE OF APPEALABILITY**

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's IAC claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

**V.      CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. The Petition for Writ of Habeas Corpus is DENIED, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2. The Clerk of the Court shall enter judgment, terminate all pending matters, and close the file.

IT IS SO ORDERED.

Dated:  9/5/14

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.11\Palacios3582.denyHC-revised.docx